# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **CRYPTOPEAK SOLUTIONS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:15-cv-1804** |
| **YAHOO! INC., and** | |
| **TUMBLR, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## DEFENDANTS YAHOO! INC. AND TUMBLR, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 35 U.S.C. §§ 101, 112

## TABLE OF CONTENTS

I.     BACKGROUND .................................................................................................... 3

II.    LEGAL STANDARD ............................................................................................ 4

    A.    A Rule 12(b)(6) Motion May Properly Challenge The Validity Of A Patent ........ 4

    B.    Patents That Claim Abstract Ideas Are Unpatentable Under 35 U.S.C. § 101 ....... 7

    C.    Patent Claims That Mix Statutory Classes Are Prohibited .................................... 8

III.    ARGUMENT ...................................................................................................... 10

    A.    The Asserted Claims Are Unpatentable Under 35 U.S.C. § 101 ......................... 10

        1.    The Asserted Claims Are Directed To The Abstract Idea Of "Using Algorithms To Generate, Verify, And Recover Public And Private Keys" ................................................................................................ 10

        2.    The Asserted Claims Add Nothing Inventive To The Underlying Abstract Idea ................................................................................... 14

        3.    The Asserted Claims Fail The Machine-Or-Transformation Test ........... 19

    B.    The Asserted Claims Elect Multiple Statutory Classes And Are Invalid As Indefinite Under 35 U.S.C. § 112 ................................................................... 20

        1.    Express Recitation Of "Method And Apparatus" Requires A Finding Of Invalidity ...................................................................... 20

        2.    The Remaining Claim Language Confirms That The Claim Recite Both An Apparatus And Method Of Using That Apparatus .................... 22

    C.    Claims 1-3 Are Also Invalid Under 35 U.S.C. § 112 For Reciting Subjective Terms That Do Not Provide Reasonable Certainty ............................................. 25

IV.    CONCLUSION .................................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)....................................................................... 7, 12

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)............................................................................. 9

*Alice Corp. v. CLS Bank Int'l*,
    --- U.S. ---, 134 S. Ct. 2347 (2014)......................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 5

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    198 F.3d 1374 (Fed. Cir. 1999)............................................................................ 6

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012)................................................................. 5, 15, 17

*Bilski v. Kappos*,
    561 U.S. 593 (2010)............................................................................ 1, 13, 19, 20

*Blue Spike, LLC v. Google Inc.*,
    No. 4-14-cv-01650, 2015 U.S. Dist. LEXIS 119382, (N.D. Cal. Sept. 8, 2015)....... passim

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)............................................................................ 5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)............................................................................ 9

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004)..................................................................... 10, 22

*Clear with Computers, LLC v. Altec Inds., Inc.*,
    No. 6:14-cv-79, -89, 2015 WL 993392 (E.D. Tex. March 3, 2015)............................ 6, 14

*Clear with Computers, LLC v. Altec Inds., Inc.*,
    No. 15-1525, 2016 WL 494593 (Fed. Cir. Feb. 9, 2016). .................................. 6

*Collaboration Props., Inc. v. Tandberg ASA*,
    No. C 05-01940, 2006 WL 1752140 (N.D. Cal. June 23, 2006) ...................................... 21

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................... 5, 13

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009)..................................................................... 9

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ........................................................................ 5

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
    558 Fed. App'x 988 (Fed. Cir. 2014)............................................................ 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011).......................................................... 17, 18, 20

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012).......................................................... 12, 13, 20

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)...................................................................................... 7

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)............................................................. passim

*E-Watch Inc. v. Apple, Inc.*,
    No. 2:13-cv-1061, 2015 WL 1387947 (E.D. Tex. Mar. 25, 2015) ............... 10, 21, 22, 24

*Ex Parte Lyell*,
    17 U.S.P.Q.2d 1548, 1990 WL 354583 (B.P.A.I. 1990) ............................ 9, 21

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
    No. 4:14-CV-2972, 2015 WL 1034275 (S.D. Tex. Mar. 10, 2015) ............... 27

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)..................................................................... 9

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)...................................................................................... 11

*HTC Corp. v. IPCom GmbH & Co.*, KG,
    667 F.3d 1270 (Fed. Cir. 2012).................................................................... 23

*H-W Tech., L.C. v. Overstock.com, Inc.*,
    758 F.3d 1329 (Fed. Cir. 2014)................................................................. 9, 21

*In re TLI Commc'ns LLC Patent Litig.*,
    87 F. Supp. 3d 773 (E.D. Va. 2015) .............................................................. 6

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*,
   792 F.3d 1363 (Fed. Cir. 2015) ...................................................................... 11

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
   No. 13-CV-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) .......................... 8, 16, 18

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
   No. 13-cv-009, 2014 WL 1620733 (D. Del. Apr. 22, 2014) ........................................... 10

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)................................................................... 26, 27

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)............................................................... passim

*Kinglite Holdings Inc. v. Micro-Star Int'l Co.*,
   No. 2-14-cv-03009, 2015 WL 6437836 (C.D. Cal. Oct. 16, 2015) ...................... 8, 17, 18

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   107 F. Supp. 3d 677 (E.D. Tex. 2015) ............................................................ 12

*Landmark Technology, LLC v. Assurant, Inc.*,
   No. 6-15-cv-00076, 2015 WL 4388311 (E.D. Tex. July 14, 2015)............................ 6, 14

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   No. 2:13-CV-65, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)........................................ 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ................................................................... 7, 12, 14, 18

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008)........................................................... 21, 22, 23

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ........................................................................ 25, 27

*Neitzke v. Williams*,
   490 U.S. 319 (1989)............................................................................... 5

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003)................................................................... 22

*OIP Tech., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)................................................................ 5, 18

*OpenTV, Inc. et al v. Apple Inc.,*
> No. 5-15-cv-02008, 2016 U.S. Dist. LEXIS 10445 (N.D. Cal. January 28, 2016) ........... 8

*Ormco Corp. v. Align Tech., Inc.,*
> 463 F.3d 1299 (Fed. Cir. 2006) ...................................................................................... 9

*Ortho–McNeil Pharm., Inc. v. Mylan Labs., Inc.,*
> 520 F.3d 1358 (Fed. Cir. 2008) .................................................................................... 22

*Parker v. Flook,*
> 437 U.S. 584 (1978) ....................................................................................... 11, 12, 14

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.,*
> No. 13-cv-1608, 2015 WL 4730906 (D. Del. Aug. 10, 2015) ......................... 8, 16, 17, 18

*Rembrandt Data Techs., LP v. AOL, LLC,*
> 641 F.3d 1331 (Fed. Cir. 2011) ...................................................................................... 8

*SFA Sys., LLC v. 1-800-Flowers.com, Inc.,*
> 940 F. Supp. 2d 433 (E.D. Tex. 2013) .................................................................... 10, 21

*Ultramercial, Inc. v. Hulu, LLC,*
> 772 F.3d 709 (Fed. Cir. 2014) .............................................................................. passim

*Uniloc USA, Inc. v. E-MDS, Inc.,*
> No. 6:14-cv-625, 2015 U.S. Dist. LEXIS 130844 (E.D. Tex. Aug. 19, 2015) .................. 6

**Statutes**

35 U.S.C. § 101 ................................................................................................... passim

35 U.S.C. § 112 ................................................................................................... passim

35 U.S.C. § 271(a) ...................................................................................................... 9

35 U.S.C. § 287 ........................................................................................................... 9

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ............................................................ passim

Defendants Yahoo! Inc. and Tumblr, Inc. (collectively, "Yahoo") move to dismiss Plaintiff CryptoPeak Solutions, LLC's ("CryptoPeak") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because claims 1-4 and 17 ("the Asserted Claims") of U.S. Patent No. 6,202,150 ("the '150 Patent") fail to meet the threshold patent eligibility requirements under 35 U.S.C. § 101 and are indefinite under 35 U.S.C. § 112 as a matter of law.

Before CryptoPeak may enforce the '150 Patent, this Court must make a threshold determination, as a pure question of law, whether the '150 Patent claims patentable subject matter under 35 U.S.C. § 101. *Bilski v. Kappos*, 561 U.S. 593 (2010); *Alice Corp. v. CLS Bank Int'l*, --- U.S. ---, 134 S. Ct. 2347 (2014). Since *Alice*, courts have repeatedly dismissed infringement cases, particularly in the internet and business method contexts, because the asserted patents claim nothing more than abstract ideas implemented on computer systems.

The '150 Patent is directed to cryptography techniques used to encrypt and decrypt data. The Asserted Claims are long and verbose and full of obscure functional language and technical jargon—including "key generation algorithm," "secret keys," "public keys," and "proofs"—but the issues here are straightforward. The Asserted Claims broadly and abstractly recite the intended result of generating data using an algorithm in a way that allows a third-party to confirm the accuracy of or recover that data. The '150 Patent's fatal flaw, however, is that the Asserted Claims do not recite *any* details whatsoever describing the nature of the algorithm, such as how it manipulates data in some previously unknown way, or how it operates in practice to allow data to be verified and/or recovered. Without more, the Asserted Claims are akin to saying "scramble data and use the scrambled data to verify or recover other data."

To see clear evidence of the Asserted Claims' abstract nature, this Court need look no farther than CryptoPeak's complaints in this and the other lawsuits filed by CryptoPeak.

CryptoPeak has filed over sixty-five (65) separate complaints targeting companies in disparate markets and whose business operations often have no relation.  Nevertheless, each of these complaints accuses the respective Defendant(s) of operating websites that use a particular type of security measure that is an industry standard known as "Elliptic Curve Cryptography" (ECC). Tellingly, the '150 Patent has nothing to do with ECC and does not contain a single mention of ECC or description of an analogous method for protecting information exchanged by websites. The only reason CryptoPeak is able to assert the '150 Patent against such a broad and disparate market is because the Asserted Claims are so abstract and recite no details of how the purported invention operates in practice.  The abstract idea underlying the Asserted Claims can be articulated in different ways, but it can be described conceptually as "*using algorithms to generate, verify, and recover public and private keys*"—age-old concepts capable of being performed by humans without computers—that are patent ineligible under 35 U.S.C. § 101.

Additionally, the Asserted Claims are indefinite under 35 U.S.C. § 112 as each claim expressly recites "[a] *method and apparatus* for generating [or for publishing] public keys and a proof . . . ."  As the remaining claim language confirms, the Asserted Claims are *expressly* directed to more than one statutory class of invention in violation of Federal Circuit law.

Resolving these issues does not require additional discovery, claim construction, or resolution of any underlying material factual dispute.  Therefore, to conserve judicial resources and unnecessary litigation between the parties, Yahoo requests that this Court dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

CryptoPeak brought suit against Yahoo on November 20, 2015, alleging patent infringement.   On the same day, CryptoPeak filed similar complaints against 37 other defendants, including Ally Financial, Inc., Expedia, Inc., HSN, Inc., Marriott International, Inc. and Pinterest, Inc., among others.[1]   In addition to the suits brought on November 20, 2015, CryptoPeak filed 50 cases on July 17, 2015 and November 9, 2015.   In each case, CryptoPeak is asserting only the '150 Patent.   Of the 66 cases brought by CryptoPeak since July 2015, twenty-two have been dismissed with prejudice upon motion of the parties.

Against Yahoo, CryptoPeak asserts one patent—the '150 Patent.[2]   The '150 Patent's purported invention relates to an "escrow cryptosystem that is overhead-free, does not require a cryptographic tamper-proof hardware implementation (*i.e., can be done in software*), is publicly verifiable, and cannot be used subliminally to enable a shadow public key system."   '150 Patent, Abstract (emphasis added).   In particular, the '150 Patent purports to disclose a cryptosystem for escrowing keys to allow "trusted authorities" to "recover" keys and to access encrypted data if necessary.   *Id.*   The '150 Patent claims to be filed at a time when the U.S. Government was concerned that its surveillance efforts would soon be impossible as encryption technologies spread.   *See id.*, 1:43–47.   "Key escrow systems" provided a database of encryption keys that law enforcement agents could use to read encrypted communications during an authorized wiretap. *See id.*, 1:49–53.   Key escrow is analogous to the large key ring entrusted to a building superintendent that unlocks any apartment door to provide police access under a search warrant.

---

[1] *See, e.g.*, *CryptoPeak Solutions, LLC v. Ally Financial Inc.*, No. 2:15-cv-01787; *CryptoPeak Solutions, LLC v. Expedia, Inc.*, No. 2:15-cv-01791; *CryptoPeak Solutions, LLC v. HSN, Inc.*, No. 2:15-cv-01792; *CryptoPeak Solutions, LLC v. Marriott International, Inc.*, No. 2:15-cv-01797*CryptoPeak Solutions, LLC v. Pinterest, Inc.*, No. 2:15-cv-01799.
[2] CryptoPeak's complaint asserts only claims 1-4 and 17 of the '150 Patent.  (Dkt. 1, ¶¶ 22-24.)

Each of the Asserted Claims are independent claims directed to using ***mathematical algorithms*** to (1) generate public and private keys using a well-known key generation algorithm, and (2) construct a "proof" to verify that the keys were generated properly or to recover the keys.

Claim 1 generally recites the steps of:

(1) generating a random string of bits;

(2) running an algorithm to generate public and private keys using the random string; and

(3) constructing a "proof" using the private key that allows others to confirm—without access to the private key—that the public key was created using the algorithm.

Claim 2 includes similar steps as claim 1, but recites that the generated data is used as part of an exchange of messages that help confirm data is coming from the correct user (commonly referred to as "challenges").

Claim 3 is similar to claim 1, but the final step recites using the proof to confirm the accuracy of the private key, as opposed to the public key recited in claim 1.

Claim 4's final step more broadly recites sending a proof that the private key is "recoverable."

Claim 17's final step recites similar substance as claim 4, but defines and refers to the public and private keys as the variables "x" and "y," respectively.

Regardless of form, the Asserted Claims merely recite abstract concepts for using algorithms to generate, verify, and recover public and private keys.

## II.    LEGAL STANDARD

### A.    A Rule 12(b)(6) Motion May Properly Challenge The Validity Of A Patent

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  The rule is an important procedural mechanism that "authorizes a court to dismiss a claim on the basis of

a dispositive issue of law" and "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).  A court need not resolve unclear questions of law in favor of the plaintiff because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Federal Circuit has repeatedly held that patent-eligibility under § 101 is a question of law suitable for resolution at the pleading stage and before formal claim construction or fact development.  *See OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363-64 (Fed. Cir. 2015) (affirming pleading-stage judgment of invalidity under Section 101 without formally construing the claims); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (same); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014) (same); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353-54 (Fed. Cir. 2014) (same). As Judge Mayer explained in a recent Federal Circuit concurrence:

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings. I commend the district court's adherence to the Supreme Court's instruction that patent eligibility is a "threshold" issue by resolving it at the first opportunity.

*OIP Tech.*, 788 F.3d at 1364-65 (Mayer, J., concurring) (citations omitted); *see also Bancorp Servs., LLC. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)

("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

Courts in this district have likewise recognized that where, as here, there are no underlying material factual disputes, cases may be properly disposed of under Section 101 without the need for claim construction. *See, e.g., Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-cv-625, 2015 U.S. Dist. LEXIS 130844, at *1, 23 (E.D. Tex. Aug. 19, 2015) (Schroeder, J.) (invalidating claims at the pleading stage and prior to claim construction); *see also Landmark Technology, LLC v. Assurant, Inc.*, No. 6-15-cv-00076, 2015 WL 4388311, at *2 (E.D. Tex. July 14, 2015) (Love, M.J.) (report and recommendation) ("When patent claims on their face are plainly directed to an abstract idea, it is proper to make a determination of patent validity under § 101 at the pleading stage, and such conduct has been repeatedly sanctioned by the Federal Circuit."); *Clear with Computers, LLC v. Altec Inds., Inc.*, No. 6:14-cv-79, -89, 2015 WL 993392, at *3 (E.D. Tex. March 3, 2015) (Gilstrap, J.) ("The Court does not need to accept [movant's] characterization or assertion and can formulate a characterization of the claims without construing the claims."), *aff'd*, No. 15-1525, 2016 WL 494593 (Fed. Cir. Feb. 9, 2016). Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6).

Similarly, "[a] determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citation omitted). For this reason, a motion to dismiss may also determine whether patent claims are indefinite. *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 804-05 (E.D. Va. 2015) (invalidating claims as indefinite on a Rule 12(b)(6) motion).

**B.      Patents That Claim Abstract Ideas Are Unpatentable Under 35 U.S.C. § 101**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101. The law specifically recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***."  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added).  Recently, in *Alice,* the Supreme Court set out a two-step test for determining whether a patent is impermissibly directed to an abstract idea.  134 S. Ct. 2354-55.

*First*, this Court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  This can be done by looking to the claims to determine whether an "abstract idea [is] at the heart of system." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013); *Ultramercial*, 772 F.3d at 714 (agreeing with district court's finding regarding "the abstract idea at the heart of the [asserted] patent").  The abstract idea itself can be described conceptually, without the need to precisely delimit the precise contours of the abstract idea. *Alice*, 134 S. Ct. at 2357.

*Second*, if this Court determines that the claims recite abstract ideas, it must then evaluate whether the claims recite "an 'inventive concept'— *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id*. (internal quotations and citations omitted).  A claim that adds "well-understood, routine, conventional activity" or technology—such as general-purpose computers—does not constitute an "inventive concept."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012);

Thus, without an inventive concept to revive the abstract claims, they are invalid under § 101. *Alice*, 134 S. Ct. at 2357-58. Simply reciting steps at high level of generality, performed by some unspecified, generic computer is insufficient. *Id*. Post-*Alice*, there are myriad cases—both at the Federal Circuit and in the District Courts—finding computerized data manipulation in almost every form and fashion, including cryptography, to lack an inventive concept.[3]

### C. Patent Claims That Mix Statutory Classes Are Prohibited

"Section 112, paragraph 2, requires that the claims of a patent 'particularly point out and distinctly claim the subject matter which the applicant regards as his invention.'" *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1383 (Fed. Cir. 2005) (quoting 35 U.S.C. § 112, ¶ 2). The Federal Circuit has repeatedly held that "reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2." *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (quoting *IPXL*, 430 F.3d at 1384).

---

[3] *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-65, 2014 WL 4364848, at *8 (E.D. Tex. Sept. 3, 2014) (finding that "patents on methods for *encrypting business transactions* over the Internet" to be abstract even though they "can involve complex algorithms") (emphasis added); *see also, e.g., OpenTV, Inc. v. Apple Inc.,* No. 5-15-cv-02008, 2016 WL 344845, at *6 (N.D. Cal. January 28, 2016) (finding that claims did not amount to more than the underlying abstract idea because "controlling access to information by verifying credentials (via *well-known encryption methods*) is neither novel nor specific to interactive television systems") (emphasis added); *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, No. 2-14-cv-03009, 2015 WL 6437836, at *7, *9 (C.D. Cal. Oct. 16, 2015) (invalidating claims using *private and public key cryptography* as directed to abstract idea of "authenticating a request using further abstractions") (emphasis added); *Blue Spike, LLC v. Google Inc.*, No. 4-14-cv-01650, 2015 WL 5260506, at *6 (N.D. Cal. Sept. 8, 2015) (invalidating claims reciting "*cryptographic protocols*" as directed to abstract idea of comparing one thing to another) (emphasis added); *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, No. 13-cv-1608, 2015 WL 4730906, at *6 (D. Del. Aug. 10, 2015) (invalidating claims directed to abstract idea of decryption where "some *decryption algorithm* is used to convert the encrypted signal into a decrypted signal") (emphasis added); *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-CV-3777, 2015 WL 1941331, at *14 (S.D.N.Y. Apr. 28, 2015) (invalidating claims reciting an algorithm for choosing a "*data-encrypting algorithm*" as unpatentable mental steps) (emphasis added).

A claim mixing two statutory classes of subject matter is indefinite under 35 U.S.C. § 112 ¶ 2 because the statutory class elected by each claim dictates what actions constitute infringement, and a claim that recites more than one statutory class fails to apprise the public as to it scope. *See IPXL*, 430 F.3d at 1384 ("Because [the claim] recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2"); *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014) ("The rationale behind invalidating such a claim as indefinite is that it is unclear when infringement occurs."); *see also Ex Parte Lyell*, 17 U.S.P.Q.2d 1548, 1990 WL 354583, at *3 (B.P.A.I. 1990) (affirming rejection of claim "combining two separate statutory classes of invention in a single claim" as indefinite under 35 U.S.C. § 112 ¶ 2).

By way of example, an apparatus claim may be infringed by "making," "using," or "selling" the claimed apparatus, but a method claim can only be infringed by "using" the claimed process.  35 U.S.C. § 271(a); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").  The elected statutory class of a claim also dictates which legal precedent applies because what qualifies as an infringing "use" varies for apparatus and method claims.  *Compare Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011) ("use" of apparatus claim) *with Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020 (Fed. Cir. 2015) ("use" of method claim).[4]

---

[4] The patent marking statute also only applies to patents with apparatus claims, not only method claims. *See* 35 U.S.C. § 287; *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed. Cir. 2010) ("The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009)).

Courts in this District have applied *IPXL* to hold claims mixing statutory classes invalid. *E-Watch Inc. v. Apple, Inc.,* No. 2:13-cv-1061, 2015 WL 1387947, at *5 (E.D. Tex. Mar. 25, 2015) (Payne, J.) ("[T]he Court finds that the claims of the '168 Patent are indefinite[]because they improperly[]include method steps in apparatus claims."); *see also SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, 940 F. Supp. 2d 433, 454 (E.D. Tex. 2013) (Davis, C.J.) ("A single claim that recites two separate statutory classes of invention, e.g., 'an apparatus and a method of using the apparatus,' renders the claim indefinite under 35 U.S.C. § 112 ¶ 2." (citing *IPXL,* 430 F.3d at 1384)).   Additionally, if a claim is found to elect multiple statutory classes, the Federal Circuit has also held that courts may not rewrite a claim to preserve its validity.  *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).  In particular, "correcting an apparatus claim that includes an improper method step is not permissible."  *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-009, 2014 WL 1620733, at *5 (D. Del. Apr. 22, 2014).

## III.   ARGUMENT

### A.   The Asserted Claims Are Unpatentable Under 35 U.S.C. § 101

#### 1.   The Asserted Claims Are Directed To The Abstract Idea Of "Using Algorithms To Generate, Verify, And Recover Public And Private Keys"

The first step under *Alice* is to determine "the abstract idea at the heart of the [asserted] patent."  *Ultramercial*, 772 F.3d at 714; *see also Alice*, 134 S. Ct. at 2357.  While the Asserted Claims contain minor variations in claim language, the abstract idea at the heart of each claim is "**using algorithms to generate, verify, and recover public and private keys**."

Each of the Asserted Claims begins by reciting a system and method for running mathematical algorithms to generate a random string of bits, read system parameters, and/or generate public and private keys.  These steps involve no more than using mathematical

algorithms to generate data.  The Supreme Court and the Federal Circuit have long held that computer implemented patents covering algorithms that merely gather data, perform a calculation using that data, and then take some action based on that calculation—as in the case of the Asserted Claims—are unpatentable.  *See Gottschalk v. Benson*, 409 U.S. 63, 67-68 (1972) (patent involving an algorithm that converts binary numbers to binary coded decimals is abstract under Section 101); *see, e.g., Parker v. Flook*, 437 U.S. 584, 589-590 (1978); *Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. App'x 988, 991-92 (Fed. Cir. 2014).  Specifically, in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, the Federal Circuit held that "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  758 F.3d 1344, 1351 (Fed. Cir. 2014).  In *Alice*, the Supreme Court reaffirmed that an algorithm used to conduct intermediated settlement was an abstract idea and a patent implementing such an algorithm on a general purpose computer cannot create a patent-eligible process.  *Alice*, 134 S. Ct. at 2357.

The Asserted Claims are likewise directed toward the patent-ineligible abstract concept of using a general-purpose computer to implement algorithms that generate, verify, and recover public and private keys.  For example, the Asserted Claims share the following basic limitations: (1) using an algorithm to generate data based on system parameters (*see, e.g.,* '150 Patent, at 12:27-28; 12: 45-46; 12:65; 13:10-11; 15:24-30); (2) using an algorithm to generate public and private keys (*see, e.g., id.* at 12:29-31; 12:47-50; 12:66-67; 13:13-13; 15:31-33); and (3) using an algorithm to construct a proof or engage in a protocol that provides confidence the keys were generated properly (*see, e.g., id.* at 12:34-40; 12:51-61; 13:1-6; 13:12-19; 15:34-37).  Each of

these steps calls for the use of mathematical algorithms to manipulate data and to generate additional data, which—the Federal Circuit has held—is not patent-eligible. *Digitech*, 758 F.3d at 1350. Moreover, the first two steps (generating data based on system parameters and generating public and private keys) are nothing more than pre-solution data generation steps that cannot represent the "heart" of a patentable system. *See, e.g., Mayo*, 132 S. Ct. at 1298 ("'[extra]-solution activity'" does not make claims eligible (quoting *Parker v. Flook*, 437 U.S. 584, 590 (1978)); *Blue Spike, LLC v. Google Inc.*, No. 4-14-cv-01650, 2015 WL 5260506, at *7-8 (N.D. Cal. Sept. 8, 2015) (finding claims reciting "cryptographic protocols" and processing "digital signatures," "hashes," and "signals" to be directed to abstract data comparisons).

The final step in each of the Asserted Claims embodies the "heart" each claim and the purported invention. These steps recite generating (or "computing," "constructing," etc.) a "proof."[5] The only details recited about the proof are that it: (a) is generated using the private key; (b) can be verified without access to the private key; and (c) allows others to confirm that either the public key (claims 1 and 2) or private key (claim 3) was generated correctly, or that the private key is "recoverable" using the public key (claims 4 and 17). None of the claims recite steps claiming how the keys are *actually* generated, verified, or recovered. And it is from the perspective of the claims through which patent eligibility is evaluated. *Accenture*, 728 F.3d at 1345 ("[T]he important inquiry for a § 101 analysis is to look to the claim."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."); *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 699 (E.D. Tex. 2015) (Bryson, J., sitting by designation) (rejecting argument that detail in the

---

[5] The final step of Claim 2 recites "the user engaging in a protocol," but defines the objective of the "protocol" using the same functional language as the "proof" in the other Asserted Claims.

specification warrants patentability of an invention).  Thus, regardless of form, each of these claims is directed to the abstract idea of "using algorithms to generate, verify, and recover public and private keys."  *See Dealertrack*, 674 F.3d at 1333 (examining claims in their "simplest form" to identify the "basic concept" at issue (quoting *Bilski*, 561 U.S. at 611)).  As the Federal Circuit already concluded in *Digitech*, such use of mathematical algorithms to manipulate existing information to generate additional information is directed toward an abstract concept that is not patent eligible.  758 F.3d at 1350.

Additionally, claim construction is not necessary at this stage to determine that the broadly worded claims are directed to an abstract idea.  Each claim recites common and basic computer functionality for generating or manipulating data by, for example, reading or accessing system parameters, running an algorithm, or computing an output.  None of the claim terms require construction at this stage because there is no reasonable construction of any term that would result in the claims being directed to anything other than common and generic activity.  *See Content Extraction*, 776 F.3d at 1347 (affirming grant of Rule 12(b)(6) motion where claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" and finding that claim construction was unnecessary because the "concept of data collection, recognition, and storage is undisputedly well-known").  Rather, each of the Asserted Claims simply recites a "sequence of steps compris[ing] only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'"  *Ultramercial,* 772 F.3d at 716 (quoting *Alice*, 134 S. Ct. at 2355).  When, as here, it is clear that the "patent claims on their face are plainly directed to an abstract idea, it is proper to make a determination of patent validity under § 101 at the pleading stage, and such conduct has been repeatedly sanctioned by the Federal Circuit."

*Landmark Technology*, 2015 WL 4388311, at *2; *see also Clear with Computers, LLC*, 2015 WL 993392, at *1 ("The Court does not need to accept [movant's] characterization or assertion and can formulate a characterization of the claims without construing the claims.").

### 2. The Asserted Claims Add Nothing Inventive To The Underlying Abstract Idea

The Asserted Claims also fail *Alice's* second step because the claims do not recite additional limitations that amount to "significantly more" than the underlying abstract idea, and, at most, add only insignificant elements—generic computer components and functions and other non-inventive features—that the Supreme Court has stressed are insufficient to convert an abstract idea into a patent-eligible application. *See Alice*, 134 S. Ct. at 2355.

As previously discussed, the first two steps of each Asserted Claim recite no more than pre-solution data generation in the form of generating random bits, reading system parameters, or generating "public" or "private" (also referred to as "secret") keys. Each of these steps is "[extra]-solution activity" that cannot salvage patentability. *Mayo*, 132 S. Ct. at 1298; *Flook*, 437 U.S. at 590; *see also Blue Spike*, 2015 WL 5260506, at *7-8 (finding data comparisons and processing streams of bits during "cryptographic protocol" require only "routine computer components and methods (e.g., general purpose computers, compression, and databases)"). For example, "strings of bits" are nothing more than data, and "public" and "private keys" are simply abstractions that connote data which is either made public or kept private. However, the Federal Circuit has made clear that "[d]ata in its ethereal, non-physical form is simply information that does not fall under any of the categories of eligible subject matter under section 101." *Digitech*, 758 F.3d at 1350.

Additionally, that claims 1-3 and 17 require some undefined "key generation algorithm" or "specific algorithm" to generate portions of this data is likewise insufficient. Not only do

these claims fail to provide any details on the nature of the algorithm used, such as what steps the algorithm involves, but the Federal Circuit has made clear that "a process that employs **mathematical algorithms** to manipulate existing information to generate additional information is not patent eligible." *Id.* (emphasis added).  Moreover, the '150 Patent disclaims that there is anything novel about the algorithm used.  '150 Patent, 6:39-42 ("For convenience in the presentation, the hashing algorithm selected is SHA (Schneier 2nd edition, pages 442-445), though any cryptographic algorithm will suffice in its place.").  This "use of a computer in an otherwise patent-ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes."  *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

The final step of claims 1 and 2 recite "constructing a proof" (or "engaging in a protocol") that "provides confidence . . . that said public key was generated properly by the specified algorithm."[6]  Claim 3's final step similarly recites "constructing a proof that the private key was generated properly."   The final steps of claims 4 and 17 likewise recite computing or sending a "proof," but instead state that the intended function of the proof is to establish that the private key is "recoverable" by some unspecified third party.  Whether viewed individually or in the context of each claim as a whole, these additional steps fail to amount to significantly more than the underlying abstract idea of "using algorithms to generate, verify, and recover public and private keys."

---

[6] Defendants' argument below that the term "provides confidence" is indefinite under 35 U.S.C. § 112 is consistent with their argument here.  The term "provides confidence" is so broad and abstract to the point of being indefinite, and there is no plausible construction that could amount to significantly more than the underlying abstract idea.

First, these claimed steps are broad and abstract, and do not recite novel technology, or a novel series of steps for achieving some technological result.  Rather, each claim simply states the purported invention's ***intended goal*** in functional language and at a high level of generality (i.e., a "proof" capable of confirming that the key was generated properly or that the key is recoverable).  The claims do not provide ***any*** detail on how the proof is generated or how that proof operates in practice, other than to say that it is generated using the "private key" and can be verified without access to the "private key."  For example, the Asserted Claims fail to include limitations that describe how the creation of such proofs and communication provides confidence, or how the keys may be used in practice to allow recovery by a third party.  The '150 Patent likewise fails to specifically disclose the method by which the proof or protocol will be generated, how access rights will be controlled, or how confidence in the authenticity of the public key will be determined.  Instead the specification merely references other well-known cryptographic techniques available in the industry for generating what is referred to as a certificate of recoverability.  *See, e.g.*, '150 Patent, 7:61-8:51.

Even if limited to a particular field, such as computer cryptography, reciting abstract data security concepts like generating "proofs" or generating "keys" using some unspecified algorithm cannot supply an inventive concept.  *See Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-CV-3777, 2015 WL 1941331, at *8 (S.D.N.Y. Apr. 28, 2015) (holding that "firewall" and "access control proxy" were merely abstract data security concepts "implemented by some undescribed mathematical formula" and were "not a physical thing, but a metaphor connoting separation and impenetrability implemented by some undescribed mathematical formula. . . .  There is nothing concrete to make the patent eligible for protection").  Thus, the Asserted Claims are similar to those invalidated in *Personalized Media* where the court found a

patent claim that involved using some unspecified algorithm to receive an encrypted control signal and encrypted information, decrypt the control signal, use the signal to decrypt the information, and then presenting programming was ineligible for patent protection under the Federal Circuit's decision in *Digitech*.  *Personalized Media*, 2015 WL 4730906 at *5 ("I think the claim here is similar to that in *Digitech*: some decryption algorithm is used to convert the encrypted signal into a decrypted signal.").  At best, "the claimed sequence of steps comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'"  *Ultramercial*, 772 F.3d at 716 (quoting *Alice*, 134 S. Ct. at 2355).

Second, the claimed sequence of steps can be performed entirely by a human using pen and paper.  "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making the calculations or computations could not."  *Bancorp*, 687 F.3d at 1278; *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (a claim that "can be performed in the human mind, or by a human using a pen and paper" is not patentable under § 101).  While the claims are generally directed to a "method and apparatus," the only arguable hardware components present in the claims is some generic computer "system" that performs certain steps.  However, the term "system" itself is abstract and at most connotes "a handful of generic computer components configured to implement the same [abstract] idea."  *Alice*, 134 S. Ct. at 2360.  Several courts have encountered similar claims reciting cryptography algorithms and concluded that steps for "generating a signature using a 'private key' and verifying that signature with a 'public key' *can be performed by a human* who is capable of reading such keys."  *See Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, No. 2-14-cv-03009, 2015 WL 6437836, *8 (C.D. Cal. Oct. 16, 2015) ("The fact that *mathematical algorithms* are involved in reading such keys is

of no consequence because even algorithms performed on a generic computer are abstract ideas.") (emphases added); *see also Intellectual Ventures II*, 2015 WL 1941331, at *15 ("The first step [of analyzing network communications and detecting intrusion through a firewall] **amounts to a mental process, even if aided by a computer** to translate data or speed up calculations.") (emphasis added); *Blue Spike*, 2015 WL 5260506, at *6 ("[T]o the extent the asserted claims do encompass comparisons that a human is not readily capable of undertaking . . . they nevertheless also cover and preempt a wide range of comparisons that humans can and, indeed, have undertaken from time immemorial.").  As the Federal Circuit has made clear, these steps cannot supply an inventive concept because "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."  *OIP Tech.*, 788 F.3d at 1363; *see also CyberSource*, 654 F.3d at 1373 ("Methods which can be performed entirely in the human mind are unpatentable . . . [and] are the types of methods that embody the basic tools of scientific and technological work that are free to all men and reserved exclusively to none." (quotation omitted)).

Finally, the Asserted Claims recite "'well-understood, routine, conventional activit[ies]' previously known to the industry" that the Supreme Court has held are insufficient to find an "inventive concept."  *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1298).   The concept of cryptography is not new: "Cryptography has been used to protect information since ancient Mesopotamia."  *Personalized Media*, 2015 WL 4730906, at *6.   The industry has long used public and private keys as a means to encrypt data, and these methods inherently provided confidence that the data was generated using the private key.  *See Kinglite Holdings*, 2015 WL 6437836, at *9 ("[A]lgorithms to sign a message or to create digital signatures [using public and private keys] for a message are known in the art." (internal quotations marks omitted)).   Courts

have even recognized that "the use of a cryptographic protocol that has 'at least a hash or digital signature . . . *merely call for the use of these conventional cryptographic methods*." *Blue Spike*, 2015 WL 5260506, at *8 (emphasis added).  The Asserted Claims recite using these same well-understood, routine, conventional cryptographic methods that numerous courts have rejected. *See supra*, at 6 n.2 (collecting cases).

Moreover, the claims themselves do not recite any technological improvements to known technology, or even new concepts previously unknown to the cryptography industry.  Rather, the Asserted Claims recite using public keys, private keys, and proofs to verify data was generated properly.  The '150 Patent's specification admits that "public key cryptosystems" that used public and private keys, and a third party "certification authority" to verify authenticity have been used since at least 1976.  '150 Patent, 1:17-21.  The specification describes, at length, prior art "key escrow systems" that all used these features.  *Id.*, 1:17 – 3:48.  The '150 Patent goes on to describe ways for purportedly improving these prior art systems; however, fatally, none of the steps for implementing such improvements are recited by the claims.  Rather, the claims broadly and abstractly recite generating a proof that allows others to verify that a key was generated properly and/or is recoverable.  This is legally insufficient.  *See Alice*, 134 S. Ct. at 2354-55.

### 3.    The Asserted Claims Fail The Machine-Or-Transformation Test

The Asserted Claims also fail the so-called "machine-or-transformation test"—which, although not the "sole test," has been described at times as a "useful clue" in finding claims patent-ineligible under § 101.  *Bilski*, 561 U.S. at 603; *Ultramercial*, 772 F.3d at 716.  First, although directed to a "method and *apparatus*," the claims are not sufficiently tied to "a particular machine" in a way that satisfies the machine-or-transformation test.  *Ultramercial*, 772 F.3d at 716.  As discussed above, the mathematical algorithms and calculations recited by the

claims can be performed entirely in the human mind, and the only arguable hardware present in the claims is some unspecified, generic "system."  This is precisely the type of incidental use of a machine the Federal Circuit has repeatedly found wanting.  *See, e.g., Ultramercial*, 772 F.3d at 716-17; *Dealertrack*, 674 F.3d at 1333-34; *CyberSource*, 654 F.3d at 1373, 1375.

Second, the claims do not "transform[] a particular article into a different state or thing." *CyberSource*, 654 F.3d at 1369 (quotation and citation omitted).  The Federal Circuit has held that "[t]he mere manipulation or reorganization of data … does not satisfy the transformation prong."  *Id.* at 1375.  Here, the Asserted Claims are directed primarily to manipulating and processing data by, for example, generating public and private keys, and constructing a proof. The Asserted Claims merely recite steps for retrieving and organizing data and therefore do not involve a qualifying transformation.  *Id.*

The fact that the Asserted Claims also fail the machine-or-transformation test is itself compelling evidence that the Asserted Claims are directed to unpatentable subject matter and are invalid.  *Bilski*, 561 U.S. at 603; *Ultramercial*, 772 F.3d at 716.

### B.    The Asserted Claims Elect Multiple Statutory Classes And Are Invalid As Indefinite Under 35 U.S.C. § 112

The Asserted Claims of the '150 Patent each expressly recites a "method and apparatus." Thus, each Asserted Claim, on its face, recites two classes of subject matter and is indefinite under 35 U.S.C. § 112, ¶ 2.  *See IPXL*, 430 F.3d at 1384.  Additionally, the remaining claim language confirms the intent to include both an apparatus and method steps using that apparatus.

### 1.    Express Recitation Of "Method And Apparatus" Requires A Finding Of Invalidity

Each Asserted Claim is invalid under Section 112 because each **expressly** recites both "A **method and apparatus** . . . ." in the same claim.  The defects in these claims are direct violations

of the requirement that each claim selects a single statutory class, and each claim fails to apprise the public as to its scope. *IPXL*, 430 F.3d at 1384; *SFA Sys.*, 940 F. Supp. 2d at 454.  For this reason alone, these claims create uncertainty as to the scope of the claim and are invalid on their face, and this Court should declare so at this stage. *See, e.g., IPXL*, 430 F.3d at 1384.

The clear ambiguity created by the express identification of the two statutory classes differentiates these claims from those that courts have previously declined to invalidate for reciting system elements in a method claim. *See, e.g., Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (declining to invalidate claim as indefinite for reciting a method of executing instructions on a processor while including structural limitations and the method steps implemented in the processor); *Collaboration Props., Inc. v. Tandberg ASA*, No. C 05-01940, 2006 WL 1752140, at *3-4 (N.D. Cal. June 23, 2006) (declining to invalidate claims that recited a "method of conducting a teleconference using a system").  Unlike the claims in *Microprocessor Enhancement* and *Collaboration Props.*, which were clearly labeled "a method of [performing steps using specific structure]" in the preamble, the claims here require "a method *and* apparatus comprising."  The preamble could not be more explicit that the claim covers both statutory classes.

Courts have consistently held that this type of defect renders the claims indefinite under 35 U.S.C. § 112, ¶ 2 because it is unclear when the claims would be infringed. *See IPXL*, 430 F.3d at 1384; *H-W Tech.*, 758 F.3d at 1335; *E-Watch*, 2015 WL 1387947 at *5.  Similarly, the Patent Office has found that an analogous claim expressly reciting "a workstand and method for using same comprising" was indefinite under 35 U.S.C. § 112, ¶ 2, because it selected multiple classes of invention. *Lyell*, 1990 WL 354583, at *1.  In *Lyell*, the Board "agree[d] with the examiner that a single claim which purports to be both a product or machine and a process is

ambiguous and is properly rejected under 35 USC 112, second paragraph . . . ."  *Id*. at *3.  The steps recited by the body of the claim in *Lyell* were not unclear, but the claim's metes and bounds were ambiguous because the claim elected two **distinct** statutory classes of invention. *See id.*  Here, the Asserted Claims contain the same ambiguities because they expressly recite both a method and apparatus, and therefore, provide no clarity as to the covered statutory class. As such, the Asserted Claims are invalid on their face.

The defect in these claims is so glaring that CryptoPeak may ask the Court to overlook or even correct the claims.  But, the Court must instead read the claims as written "not as the patentees wish they had written it."  *See E-Watch*, 2015 WL 1387947, at *6 (quoting *Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)).  The Court's power to correct errors is limited and only allows correction of an obvious typographical or transcription error. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).  The patentee's election of a statutory class is not a typographical error, but a key determination in drafting claims.  Courts cannot redraft claims such as these to omit either "method" or "apparatus."  *Ortho–McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008) ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity.").  Therefore, this Court should declare these claims invalid at the outset of this case to avoid unnecessary litigation over claims that are invalid on their face.

### 2. The Remaining Claim Language Confirms That The Claims Recite Both An Apparatus And Method Of Using That Apparatus

In addition to the language identifying the Asserted Claims as covering both a "method and apparatus," the remaining claim language describes both steps performed by the apparatus and method steps performed by a user using that apparatus.

A valid apparatus claim must recite only structural limitations (i.e., structure or capabilities of structure) or functional language subject to 35 U.S.C. § 112, ¶ 6.  *See Microprocessor Enhancement*, 520 F.3d at 1375; *HTC Corp. v. IPCom GmbH & Co.*, KG, 667 F.3d 1270, 1277-78 (Fed. Cir. 2012).   A method claim recites a series of steps, rather than requiring structure.   Here, the Asserted Claims attempt to encompass both, just as in *IPXL*.   In *IPXL*, the Federal Circuit invalidated a claim that recited both a "system" and method steps for the use of that system by a user:

> 25. The system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*IPXL*, 430 F.3d at 1384 (quoting U.S. Patent No. 6,149,055).   The Federal Circuit held that the claim was invalid because "it is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction."  *Id.*

The same considerations apply here.   For example, independent claim 1 of the '150 Patent identifies a "user" and a "user's system" and then identifies steps that the "user's system" must perform, and steps that the "user" must perform:

> 1. A **method and <u>apparatus</u>** for generating public keys and a proof that the keys were generated by a specific algorithm **comprising the steps of**:
>
> [1] **<u>the user's system</u>** generating a random string of bits based on system parameters;
>
> [2] **the user** running a key generation algorithm to get a secret key and public key using the random string and public parameters;

[3] **the user** constructing a proof being a string of bits whose public availability does not compromise the secret key and wherein said constructing of said proof requires access to said key, but at the same time said proof provides confidence to at least one of a plurality of other entities that said public key was generated properly by the specified algorithm, and wherein said confidence is gained without having access to any portion of said key.

'150 Patent, claim 1 (emphases added).  Each step in claim 1 is either a process step performed by the user's system (step [1]) or a step by the user performed ***using*** the system (steps [2] and [3]) just like *IPXL*.  The result, as the preamble states, is a "method and apparatus."

A recent post-*IPXL* case in this district illustrates these principles.  *See E-Watch*, 2015 WL 1387947, at \*6.  A claim at issue in *E-Watch* recited an "[a]pparatus" comprising "operation of the input device ***by the user***" and "movement ***by the user*** of the portable housing."  *Id.* (emphasis added).  The court found that the language "by the user" referred to steps that must be performed by the user, as opposed to system capabilities, which might be more appropriate limitations in the apparatus claims at issue.  *Id.* at \*6.  The court rejected plaintiff's attempt to redraft the claims to read the "by the user" language out of the claims.  *Id.*

Here, the Asserted Claims similarly recite system capabilities and the use of that system by a user.  The limitations in the Asserted Claims improperly incorporate both actions strictly taken by the system—*e.g.,* to "generate" (or "read," "access," "calculate," "compute," etc.) data—and actions taken by a user using that system, *e.g.* to "run" a key generation algorithm (or "construct" or "send" data using the system).  Thus, in accordance with *E-Watch*, the patentee's mixing of an apparatus (i.e., the user's system) and a method steps (i.e., the user's actions) renders the claims indefinite under *IPXL*.

As shown by the exemplary language in the below chart, this defective recitation of multiple statutory classes is found on the face of each of the Asserted Claims:

| Asserted Claim | Exemplary Language Reciting Both An Apparatus And Method Of Using That Apparatus |
|----------------|-----------------------------------------------------------------------------------|
| 1 | "A **method and apparatus** for generating public keys" with "**the user's system generating** a random string of bits," "**the user running** a key generation algorithm," and "**the user constructing** a proof" |
| 2 | "A **method and apparatus** for generating public keys" with "**the user's system generating** a random string of bits," "**the user running** a key generation algorithm" and "**the user engaging** in a protocol" |
| 3 | "A **method and apparatus** for publishing public keys" with the method step of "**the user's system reading** the system parameters," "**the user's system running** a key generation algorithm," and "**the user's system constructing** a proof " |
| 4 | "A **method and apparatus** for publishing public keys" with "**the user generating** the keys based on an input," "**the user sending** a string " |
| 17 | "A **method and apparatus** . . . where initially **a mechanism for generating the system's public parameters is executed** and then **the user takes the following steps**" of "**accessing** the system parameters" and "**choosing** a private key" |

'150 Patent, Claims 1-4, 17 (emphasis added).  As with claim 1, the pattern of reciting both an

apparatus and a method of using that apparatus in each of these claims renders them indefinite.

## C.     Claims 1-3 Are Also Invalid Under 35 U.S.C. § 112 For Reciting Subjective Terms That Do Not Provide Reasonable Certainty

In addition to the flawed mixed-format drafting of all five of the Asserted Claims, claims

1-3 are indefinite for an additional reason: they recite terms that fail to meet the requirement set

forth by the Supreme Court in *Nautilus* that the claims provide one of skill in the art "reasonable

certainty . . . about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.

Ct. 2120, 2124 (2014).   Specifically, claims 1 and 2 each recite a proof that "provides

confidence" to some third party entity that a public key was "generated properly by the specified

algorithm."  '150 patent, 12:36-38, 12:58-60.   Claim 3 recites "constructing a proof that the

private key was generated properly . . . ." *Id.* at 13:1-2.

Both "provides confidence" and "generated properly" are terms of degree, and neither appears in the '150 patent or has any related explanation providing "objective boundaries for one with skill in the art" to evaluate them.  *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (holding that "claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art").  The prosecution history only describes that a proof needs to be generated and that confidence "is gained without access to any portion of the private key," which hints at a manner in which confidence is to be achieved without signposting the actual degree of "confidence" needed to satisfy the claim.  Ex. A ('150 prosecution history, June 15, 2000 Office Action Response, at 7).

Taking the subjective "confidence" term at face value, it is unclear how anyone could be reasonably certain about a third party's degree of confidence.  *See Interval Licensing*, 766 F.3d at 1371-74 (finding the facially subjective term "unobtrusive manner" indefinite, even where the specification defined an example).

As for a key being "generated properly by the specified algorithm," this presupposes that a key could be generated, yet be generated ***improperly*** by the specified algorithm.  However, key generation is black-or-white: a specified algorithm will either generate a key or not.  Additionally, whether something has been done "properly" is not an objective measure, unless it is defined with reference to some appropriate test for determining propriety.  Here, the claims do not recite any reference by which "properly" may be measured.  Thus, the term "generated properly" also injects uncertainty into the claims.

CryptoPeak may argue that "provides confidence" and "generated properly" are terms of art.  Even if it were the case that these terms are generally used within the cryptography industry, that cannot change the fact that, at most, these terms connote abstract data security concepts that

are incapable of rendering patent claims sufficiently definite under *Nautilus*.  For example, even if the Court were to accept that "provides confidence" were a term of art connoting some statistically verifiable level of accuracy, the fact remains that the claims themselves are not sufficiently precise to enable a person to have "reasonable certainty" about the level of accuracy required to satisfy the claim language.  In other words, the public cannot determine when they do or do not infringe a claim by "providing confidence."

Compounding the issue, the '150 Patent specification does not contain a single reference to "providing confidence."  Without any guidance from the specification, this determination would be entirely subjective based on the evaluation of one with skill in the art.  This is insufficient to satisfy the definiteness requirement of Section 112.  *Interval Licensing*, 766 F.3d at 1370-71 ("Although absolute or mathematical precision is not required, it is not enough . . . to identify some standard for measuring the scope of the phrase.") (internal citations omitted); *see also Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-CV-2972, 2015 WL 1034275, at *14-16 (S.D. Tex. Mar. 10, 2015) (Ellison, J.) (finding the term "substantially prevent communication interference between the first and second pairs" indefinite for lacking guideposts in the intrinsic evidence, and thus failing to inform with reasonable certainty those skilled in the art about the degree of interference to be prevented).

Because the terms "provides confidence" and "generated properly" fail to provide reasonable certainty to one with skill in the art, claims 1-3 should be found invalid as indefinite.

## IV.    CONCLUSION

Because none of the Asserted Claims extend beyond the underlying abstract idea, and because claims 1-4 and 17 of the '150 Patent are indefinite under 35 U.S.C. § 112, ¶ 2 for

claiming two classes of statutory subject matter, Yahoo respectfully requests that this Court dismiss this case for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com

Brent D. McCabe
Texas Bar No. 24088004
HALTOM & DOAN
4975 Preston Park Blvd., Suite 625
Plano, TX 75093
Telephone:  (469) 814-0433
Facsimile:  (469) 814-0422
Email:  bmccabe@haltomdoan.com

Jason C. White
Nicholas A. Restauri
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
(312) 324-1000 Telephone
(312) 324-1001 Facsimile
Email:  jwhite@morganlewis.com
Email:  nicholas.restauri@morganlewis.com

**ATTORNEYS FOR DEFENDANTS
YAHOO! INC. AND TUMBLR, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 18th day of February, 2016.

*/s/ Jennifer H. Doan*
Jennifer H. Doan